JOSEPH R. DAVIES and Another, Plaintiffs, v. IROQUOIS GAS CORPORATION, Defendant.*

Supreme Court, Special Term, Erie County, March 16, 1936.

*Michael M. Cohn [James O. Moore, Arthur J. Block and James O. Moore, Jr., of counsel], for the plaintiffs.*

*Kenefick, Cooke, Mitchell, Bass & Letchworth [Lyman M. Bass, William P. Stewart and George C. Letchworth of counsel], for the defendant.*

NORTON, J. On April 20, 1886, by an instrument in writing, one T. J. Kerr leased and granted to one Colin Scott the exclusive right, for the term of fifty years, to enter on certain farm lands, owned by Kerr in the town of Collins, Erie county, N. Y., and to lay pipe lines and drill for petroleum or other valuable substances thereon, together with the right to lay and operate pipes

* Revd., 248 App. Div. 670; affd., 272 N. Y. 572.

for the transportation of oil or natural gas for the period of ninety-nine years. The lease provided that, " If gas is obtained by party of the second part so as to be used for transportation, he will pay to the party of the first part a yearly rental of fifty dollars for each and every well so used on said land." The lease also gave to the lessee " the right to remove any machinery or fixture placed on said premises " by the lessee or his assigns.

By mesne conveyances these plaintiffs have become the owners in fee of all oil, gas and minerals in that part of such Kerr lands as are in question herein, " with the right to remove said oil, gas and minerals from said premises," together with the appurtenances, and all the estate, title and interest in and to the oil, gas and mineral rights, to have and to hold the same forever, subject, however, to the rights granted by such lease, which lease, through the medium of several assignments, was transferred to this defendant July 1, 1912. It has held and exercised the rights granted by said lease ever since. During the period the lease has been in effect five wells for natural gas have been drilled on the leased premises, four of which proved to be unproductive, were abandoned and the casing and tubing in each such well were drawn and removed from the premises. One of such five wells, the one in question herein, drilled to a depth of about 1,650 feet in February, 1914, proved to be quite productive, first yielding over 1,700,000 feet of natural gas per day, and gradually shrinking its output until now it is yielding approximately 300,000 feet of natural gas per day, all of such output having been withdrawn from the premises and marketed by defendant during the twenty-two years it has been in production.

As the term of the lease has been nearing its end the parties have been negotiating, the plaintiffs to sell their fee in the oil, gas and minerals and the right to explore for and remove the same, which would include their interest in such producing gas well, and the defendant to buy the same; such negotiations progressed to the point where defendant offered $5,000 and plaintiffs asked $75,000 therefor. Then, on the failure of the parties to agree upon a price that one would give and the other take, the defendant stated its purpose to exercise, prior to the expiration of the lease, the right granted therein " to remove any machinery or fixture placed on the premises " by drawing the casing and tubing of such producing gas well, claiming that such casing and tubing are fixtures, and after so drawing such casing and tubing from such gas well, stated its further purpose to plug the well, pursuant to the provisions of sections 308 and 309 of the General Business Law. The parties again entered into negotiations, this time for the purchase and sale of such casing and tubing in such producing well,

the plaintiffs offering therefor the reasonable value of the casing and tubing, which was refused by the defendant, it pricing such casing and tubing on the basis of its reasonable value, plus the cost of drilling the well and a portion of the cost of exploring that gas field, which negotiations ended as did the previous negotiations. Whereupon plaintiffs brought this action to procure a judgment permanently restraining the defendant from drawing such casing and tubing from said gas well and from plugging said gas well or otherwise injuring it, and in order to preserve such well intact and prevent injury thereto, and keep such casing and tubing in place therein until the determination of such action plaintiffs have made this motion for an order enjoining and staying defendant, its agents and employees, during the pendency of the action, from drawing such casing and tubing from such well and from plugging the well or otherwise injuring or destroying it.

Inasmuch as the defendant offered plaintiffs a substantial sum, viz., $5,000, for their title to the minerals, oil and gas in the lands, which offer defendant claims is in excess of the value of such title, and that defendant, as shown in its answering affidavits, has purchased other similar titles in nearby lands, paying therefor substantial amounts, and holds such titles as, and exercises the rights of, owner of such titles in fee simple, its contention that plaintiffs have acquired no title to the fee of such minerals, oil and gas on the leased premises under their grants, has little force.

Upon this motion the parties agree that the casing and tubing in the well are trade fixtures, but they differ as to whether they can be removed without doing serious injury to the fee that plaintiffs own in the minerals, oil and gas. In substance that difference is this lawsuit; it is the substantial issue involved herein. Taylor's Landlord and Tenant (Vol. 2 [8th ed.], p. 549) concisely states the law as follows: " The trade fixtures of a tenant remain personal property in the eye of the law so far as the right of removal is concerned. (*Mass. Nat. Bank* v. *Shinn*, 18 App. Div. 276; affd., 163 N. Y. 360.) "

But as Judge HISCOCK said in *Matter of City of New York* (192 N. Y. 295, at p. 302): " The familiar limitation upon the right to remove such fixtures is that the removal must be accomplished without substantial injury to the freehold."

The fact that the lease here in question grants the right to the lessee to remove fixtures does not enlarge nor extend the lessee's right to remove so as to allow a removal of a fixture to accomplish which will cause substantial injury to the freehold. Such is the holding in *Matter of City of New York* (*supra*, p. 303), where Judge HISCOCK further says in substance that such a removal clause in

a lease does not " convert into a removable fixture that which ordinarily would be a permanent, irremovable improvement to the freehold." Again, citing authorities in support thereof, the court in *Cohen* v. *Witteman* (100 App. Div. 338, 342) reiterates the law as follows: " The general rule is that trade fixtures can be removed. They are articles of personal property placed upon or annexed to the realty by a tenant for the purpose of carrying on a trade or business during the term of the lease and he has a right to remove them before the expiration of the lease, provided it can be done without destruction and will not materially injure the premises."

In this instance there is a producing profitable gas well. The citation of authorities holding that the removal of casing, tubing, etc., from a non-productive well is warranted are not in point. No injury can be done to such well nor the freehold by such withdrawal. The drawing of the casing and tubing from the well here in question, followed by plugging it, would mean destruction of the well; it would no longer exist; and I am satisfied that the gas field or area in the immediate vicinity of the well would be seriously damaged thereby. The well in question is a gas well, drilled as such, in a gas field; it is not an oil well and is not in oil territory. At the time the lease in question was executed the parties thereto could not have contemplated the plugging of a gas well, put down on the leased premises, as the law then in effect, chapter 64 of the Laws of 1882, only related to oil wells and did not include gas wells.

This gas well is a perpendicular drilled hole through soil and rock, reaching from the gas area, or gas bearing rock in the earth to the surface, through which the gas is carried to the surface. While the casing, tubing or lining of this well constitute fixtures, the well or hole itself is not a fixture but is part of the freehold. In a sense it constitutes a right of way for the passage of the gas to the surface, and to that extent is a part of the gas rights granted to the plaintiffs through the mesne conveyances of the minerals, oil and gas, and the right to remove them, under which they have title thereto. It is clear if defendant removes the casing and tubing from the well that the well itself will be destroyed; certainly the plugging of the well, which defendant must do, under the present law, if it removes the casing and tubing and which it states upon this motion it intends to do, will completely destroy the well. The destruction of this gas well will work irreparable injury to plaintiffs. Requiring defendant to keep and leave the well in its present condition until the final determination of the issues in this action can cause little or no damage or loss to defendant. The valuable rights and interests of the parties hereto should not be

decided in the summary manner the denials of this motion would entail, but the decision thereof should follow and be based upon a trial in which the facts can be fully developed and the law applied thereto.

The motion for a temporary restraining order should be and is granted, upon the plaintiffs giving security for the protection of the defendant by way of a bond in the amount of $1,000.