(55 App. Div. 401.)

## CONDE v. LEE.

(Supreme Court, Appellate Division, Fourth Department.　November 27, 1900.)

1. FIXTURES—REMOVAL—IMPAIRMENT OF PREMISES—INTENTION.

　　Where a tenant put an engine and boiler in the landlord's building in such a manner that it could be removed without impairment to the building, and with the intention of removing the same, such engine and boiler did not become a fixture.

2. SAME—ABANDONING PROPERTY—TERM OF LEASE—WAIVER.

　　Where a tenant abandoned the landlord's premises before the termination of his five years' lease, leaving an engine and boiler, which he had placed thereon with the intention of removing them, such abandonment was not a waiver of his right to remove the same.

3. SAME—ESTOPPEL OF LANDLORD.

　　Where a landlord attended a meeting of the creditors of his tenant, and there took security for his own claim, and allowed another creditor to take a chattel mortgage on an engine and boiler placed on the leased premises by the tenant, the landlord was estopped from claiming that such engine and boiler were fixtures, after such mortgagee had obtained title thereto under the chattel mortgage.

Appeal from trial term, Jefferson county.

Action by William W. Conde against Harriet B. Lee to recover personal property. From a judgment in favor of plaintiff, defendant appeals. Affirmed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

Charles S. Kent, for appellant.
Frank H. Hopkins, for respondent.

SPRING, J.　August 2, 1891, Agnes C. Penn and Henry W. Lee, the husband of the defendant, formed a co-partnership for the manufacture of steel springs in the city of Syracuse. Said firm became the tenant of the defendant, and during its occupancy of her premises purchased a boiler, with the necessary attachments, and placed them upon the said lands of the defendant, with the design of retaining the title thereto. In July, 1892, Agnes C. Penn withdrew from the co-partnership, and was succeeded therein by her husband, George Penn, to whom she transferred her title in the fixtures and assets of the co-partnership. The business continued without any change of name until August, 1895. The old firm had purchased land adjacent to that which it occupied as the tenant of the defendant, and on this land owned by it erected substantial buildings, which were used in its manufacturing industry. In 1893 the firm

purchased a Buckeye engine, with attachments, and also placed the same on the premises covered by the firm leasehold. The engine and boiler furnished the power to carry on the manufacturing industry. In August, 1895, said co-partnership became insolvent, and at a meeting of its creditors it was decided to secure the defendant for a claim of $6,295 by a mortgage upon the said real estate owned by said firm, and also to secure the plaintiff for an indebtedness which he held against said Penn & Lee, of $4,050, by a like lien upon said land, but subsequent to that of the defendant, and also by a chattel mortgage upon the personal property of the said firm, including the said boiler, engine, and fixtures. The defendant was represented at this conference of creditors, and was personally consulted in regard to it, and it was carried out. On the very day of the consummation of this agreement a judgment was docketed against said Penn & Lee for $23,740. All the personal property in said plant, except the boiler, engine, and attachments, covered by plaintiff's chattel mortgage, was sold in pursuance of an execution issued on said judgment, and was bid in by the judgment creditor, who sold it to Agnes C. Penn. She carried on the manufactory under the name of the Penn Spring Works, and on the 12th of August, 1895, leased the premises of the defendant. About September 14, 1897, by virtue of his chattel mortgage the plaintiff sold the engine, boiler, and attachments to the Penn Spring Works, taking back a new mortgage on said property to secure the purchase price thereof, and which was the amount unpaid on the original indebtedness against Penn & Lee. These transactions were all open and notorious, and the chattel mortgages were duly filed, and kept alive by refiling from time to time.

The engine, boiler, and attachments were purchased by Penn & Lee and placed in position while that firm was the tenant of the defendant. The referee has found, on evidence fully supporting the conclusion, that it was the intention of the tenants to retain the title and ownership of this property. It was acquired for a specific purpose, and when the tenancy was terminated it was expected that the property would be removed by the co-partnership. During the years of the term there was no assertion of any right to this property by the defendant, but, so far as her acts disclose her intention, they tally with the view that she recognized that Penn & Lee owned it. In the annexation of fixtures of this character by a tenant to the leasehold estate, the intention with which the property is attached is an important fact in determining whether the property is permanently affixed to the land, or the right of removal remains in the tenant. Cobbey, Chat. Mortg. pars. 204, 209, 214, et seq.; Thomas, Chat. Mortg. § 170; McRea v. Bank, 66 N. Y. 489; Andrews v. Button Co., 132 N. Y. 353, 30 N. E. 831; Kribbs v. Alford, 120 N. Y. 519, 24 N. E. 811. Again, the engine, boilers, and appliances were placed in a structure owned by the defendant, and in such a manner that they could be readily removed without any serious impairment to the building itself, which is an important circumstance bearing upon the right of the tenant to remove this property.

The company abandoned the premises in January, 1898, without removing these fixtures, and it is urged that by this conduct it forfeited any right it had in this property. In the first place, the abandonment was during the life of the tenancy. The renewal lease was made to Agnes C. Penn September 12, 1895, for one year, with the privilege to the lessee to continue it for five years thereafter. The lessee availed herself of this privilege, and continued to attorn to the defendant, and that was the situation at the time of the abandonment. In the second place, the right of the plaintiff to the property was founded on a chattel mortgage given with the knowledge and acquiescence of the defendant. There was default in the payment of the mortgage debt long before the abandonment, so the plaintiff's title to the property had become absolute at that time, As soon as the defendant evinced a purpose to assert title in hostility to the plaintiff, he commenced this action.

Irrespective of these considerations, there is another insuperable bar to the defendant's claim. At the meeting of the creditors upon the insolvency of Penn & Lee, both the plaintiff and the defendant participated. The scheme carried out resulted in securing the defendant for her debt amounting to $6,295, and at the same time, and as a part of this same plan, the plaintiff was also protected in his claim by securities, among which was the chattel mortgage on the engine, boiler, and attachments. The defendant's husband, who represented her, was a party to this arrangement, and she was apprised of and assented to it. It would be a monstrous proposition to hold that, after the defendant has received the full benefit of the property mortgaged to her as security, when the defendant seeks to obtain the portion inuring to him by reason of this same compromise she can defeat him by asserting title in herself, which, if it ever existed, was renounced when the chattel mortgage was given. Common honesty requires the condemnation of this kind of practice.

The judgment is affirmed, with costs to the respondent. All concur.