SETON et al. v. CITY OF NEW YORK et al.

(Supreme Court, Appellate Division, First Department. January 22, 1909.)

1. EMINENT DOMAIN (§ 317*)—TITLE OR RIGHTS ACQUIRED—NATURE OF ESTATE —"FEE SIMPLE."

Fee simple absolute is the broadest term describing title to real estate, and, when that is sought to be acquired by condemnation proceedings, the whole title is included.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 836; Dec. Dig. § 317 *

For other definitions, see Words and Phrases, vol. 3, pp. 2708–2710; vol. 8, p. 7662.]

2. EMINENT DOMAIN (§ 152*)—COMPENSATION—PERSONS ENTITLED—APPORTIONMENT.

Two or more persons may have an interest in land condemned for a public use which taken together constitute an ownership of the land, and, where one owns the fee and another owns an easement to which the land is servient, they together are the owners of the land, and are entitled to the compensation awarded, which stands in place of the land according to their respective interests.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 403; Dec. Dig. § 152.*]

3. EMINENT DOMAIN (§ 274*)—REMEDIES OF OWNERS—DEFECTS IN PROCEEDINGS —DESCRIPTION OF PROPERTY—INJUNCTION.

Where the city of New York, acting under the power conferred by the rapid transit act (Laws 1891, p. 3, c. 4, § 47, as added by Laws 1894, p. 1889, c. 752, and amended by Laws 1895, p. 1000, c. 519, § 20), institutes condemnation proceedings to acquire title to real property incumbered by an easement, and the petition and all documents incident to the proceedings set forth that the city intends to acquire "an estate in fee simple absolute, free from all liens or incumbrances," the easement is subject to condemnation, though the intention to acquire it is not specifically set forth in the proceedings, the words of the rapid transit statute specifying "rights, franchises, easements or privileges" referring to proceedings to acquire easements only; and, the award for the acquirement of full title to the servient estate being bound to answer for the extinguishment of the easement, the owner thereof cannot enjoin its destruction by the city.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 767, 768; Dec. Dig. § 274.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Special Term, New York County.

Action by Alfred Seton and others, as trustees under the will of Peter Lorillard, against the City of New York and William R. Willcox and others, constituting the public service commission for the First district of the state of New York, and another. From an order (114 N. Y. Supp. 1145), enjoining defendants during the pendency of the action from interfering with plaintiffs' easement, defendants appeal. Reversed.

Argued before INGRAHAM, LAUGHLIN, CLARKE, HOUGHTON, and SCOTT, JJ.

George S. Coleman (Henry H. Whitman, on the brief), for appellant Public Service Commission.

Theodore Connoly, Corp. counsel, for appellant City of New York.

Philbin, Beckman & Menken (S. Stanwood Menken and Richard Steele, on the brief), for respondents.

CLARKE, J. The complaint alleges that the plaintiffs are the owners in fee of a lot of land situated on the northerly side of Canal street, known as 243 Canal street, upon which lot there is now erected a six-story building; that upon the premises to the east of said lot, and known as 239 and 241 Canal street, there was erected a six-story building, now in course of demolition, the westerly wall thereof adjoins said premises and part of said wall stands on the premises known as 243 Canal street; that since on or about the 8th day of August, 1898, until on or about the 22d day of July, 1908, the plaintiffs, or their predecessors in trust, have been the owners in fee of the right or easement to insert in said westerly wall of the building 239 and 241 Canal street, the beams of the six-story building now standing on said premises 243 Canal street, and to maintain such beams in said wall as long as the same shall stand; that the beams of the building 243 Canal street are so inserted in and rest upon the said westerly walls of said building 239 and 241 Canal street; that the building 243 Canal street, and the floors thereof, are supported on the easterly side chiefly by the said westerly wall, and, if the said westerly wall is removed, the said building 243 Canal street will be without support on the easterly side thereof; that on or about the 6th day of July, 1908, the defendants Willcox and others, constituting the public service commission, by the corporation counsel, for and on behalf of the city of New York, applied for the appointment of commissioners of appraisal for the purpose, among other things, of acquiring title to said premises known as 239 and 241 Canal street, including all rights and easements therein, which proceeding is now pending, and on or about the 22d day of July, 1908, title to said premises known as 239 and 241 Canal street vested in the city of New York. And alleges upon information and belief that in said proceeding application is not made to acquire title to any part of said premises known as 243 Canal street, except to acquire such part of the easement described in paragraph 3 hereof as may be imposed upon said property sought to be acquired by this defendant, the city of New York, and in said proceeding application is made to acquire only so much of said westerly wall as stands upon said premises Nos. 239 and 241 Canal street. And

alleges upon information and belief that the defendants herein threaten to and intend to take down and remove the said westerly wall, including the part thereof standing upon the premises of the plaintiffs herein, without providing any adequate support. for said building upon said premises known as 243 Canal street in the place and stead of the said westerly wall. And alleges upon information and belief that, if this said westerly wall is taken down and removed, the plaintiffs herein will suffer great and irreparable damage. Wherefore they demand judgment that the defendants be enjoined from tearing down, destroying, or otherwise removing the said westerly wall, unless and until in said proceeding described, or some other appropriate proceeding hereafter instituted, application shall be made by the proper authority to acquire the fee to so much of the premises known as 243 Canal street, as said westerly wall now stands upon, so long as the wall shall stand.

It appears from the record on appeal that the board of rapid transit railroad commissioners on behalf of the city entered into certain contracts for the construction of a subway known as the Brooklyn Subway Loop Lines, extending from the Brooklyn Bridge under Center street, and intended to connect the Brooklyn Bridge with the new Manhattan Bridge and the Williamsburg Bridge. The public service commission having succeeded under the public service commissions law (chapter 429, p. 889, Laws 1907) to the powers of the board of rapid transit railroad commissioners, it became its duty to carry on the work of building this subway. For that purpose the commission, under the provisions of the rapid transit act (Laws 1891, p. 3, c. 4), requested the corporation counsel to institute proper proceedings to condemn the necessary real property, including a parcel situated at the northwest corner of Canal and Center streets, known as 239 and 241 Canal street, which was required for a station and station entrance. This property was owned by certain trustees of the estate of Peter Lorillard for the benefit of ·Louis Lorillard. Other trustees of that estate, for the benefit of. Jacob Lorillard, owned the adjoining property on the west, known as 243 Canal street.

The petition for the appointment of commissioners of appraisal was verified on the 6th day of July, 1908. It alleged the preliminary proceedings by the board of rapid transit railroad commissioners establishing the route of the proposed subway, and that on the 13th of March, 1908, the petitioner, the public service commission, adopted a resolution approving and adopting three similar maps or plans of certain parcels of property required for the construction, maintenance, and operation of this loop. Upon each of said maps or plans there was placed a memorandum as part thereof, clearly indicating the particular estate or estates, rights, terms, privileges, franchises, or easements to be acquired or extinguished for the purpose of such construction, maintenance, and operation of a rapid transit railway in relation to each and every parcel of property shown upon said maps or plans; that the copies were duly filed and transmitted, as required by law. It further set forth:

"The following is a general description of all the real estate to, or in, or over, or appurtenant to, which any title, interest, right, franchise, easement,

term or privilege is sought to be acquired or extinguished, and of every right, franchise, easement or privilege sought to be acquired by such city for public purposes. The premises in which an estate in fee simple is to be acquired in this proceeding are three parcels of land briefly described as follows."

Then follows a description of three parcels of land. The first parcel consists of certain lots designated as Nos. 19, 16, and 14, in block 208, section 1, which taken together form a parcel of land situated on the westerly side of Center street, extending from Canal street to Howard street with a frontage on the northerly side of Canal street extending about 37 feet 9 inches westerly from the westerly side of Center street, and with a frontage on the southerly side of Howard street extending about 36 feet 5 inches westerly from the westerly side of Center street. Included in said first parcel is the property in question, designated as lot No. 19.

The petition further sets forth as follows:

"Each lot or parcel of property to or in or appurtenant to which any title, interest, right, franchise, easement, term, or privilege is sought to be acquired or extinguished is more particularly described upon the above-mentioned maps or plans adopted by your petitioner, the said public service commission of the First district of the state of New York, on the 13th day of March, 1908, by the following numbers and descriptions, to wit: 'An estate in fee simple absolute, free from all liens or incumbrances, in and to each and every piece or parcel of property shown upon these maps or plans, which said parcels are described as follows, to wit:  *  *  *  Lot No. 19. All that certain lot, piece or parcel of land, with the building and improvements thereon erected, situate, lying and being in the borough of Manhattan, of the city of New York, in the county and state of New York, bounded and described as follows: Beginning at the corner formed by the intersection of the northerly side of Canal street with the westerly side of Center street, running thence westerly along the northerly side of Canal street thirty-seven feet, nine inches; thence northerly in a direct line one hundred and fifteen feet, ten inches; thence easterly at right angles to Center street thirty-one feet to the westerly side of Center street; and thence southerly along the same one hundred and twenty-one feet, nine and one-half inches to the point or place of beginning, be said several dimensions more or less.  *  *  *  Said estates in fee simple in said parcels of property hereinabove described are required for the construction, maintenance and operation in perpetuity of a rapid transit railroad, including said stations and station approaches or entrances.' "

The prayer of the petition was duly granted, and an order appointing commissioners of appraisal was duly made, and the oaths of the commissioners were duly filed on the 22d of July, 1908. By section 47 of the rapid transit act (chapter 4, p. 3, Laws 1891, as added by chapter 752, p. 1889, Laws 1894, and amended by section 20, c. 519, p. 912, Laws 1895), it was provided that upon the filing of the oaths of the commissioners of appraisal:

"The said city shall be and become seized and possessed in fee of absolute ownership of all those parcels of property, rights, terms, franchises, easements and privileges which are in the maps or plans and memoranda referred to in section 40 of this act, described as parcels of property, rights, franchises, easements or privileges, which are to be acquired, and also shall become seized and possessed of all the rights, terms, franchises, easements or privileges appurtenant to any lots or parcels of property indicated on said maps or plans as parcels in regard to which it is deemed necessary to acquire such rights, terms, franchises, easements or privileges or the said rights, terms, franchises, easements or privileges shall be extinguished, as the case may be, and the said board, for the said city, may immediately, or at any time or times thereafter,

take possession or enter into the enjoyment of said property rights, terms, franchises, easements and privileges, or of any part or parts thereof, without any suit or proceeding at law for that purpose, and the said board, for the said city, or any person or persons acting under its or their authority, may enter upon, use, occupy and enjoy in perpetuity all the parcels of property and all the rights, terms, franchises, easements or privileges appurtenant to any of the parcels of property, and all rights, franchises, easements and privileges described on said maps or plans, or in said memoranda for any of the purposes authorized and provided for by this act. But on such filing of said oath, the said city shall be and become forthwith liable to the respective owners of the several parcels of property, and the several rights, terms, franchises, easements and privileges appertaining thereto, and of said rights, franchises, easements and privileges acquired as aforesaid, for the true and respective values thereof, together with interest thereon from the time of filing the said oath.  *  *  * "

It appears that on parcel 19 the property in question in this proceeding, and described as extending 37 feet 9 inches on Canal street, had been erected a building whose westerly wall extended two inches further to the west, and so encroached to that extent upon the property of the plaintiffs. It was in this wall that the plaintiffs claimed an easement by way of beam rights. It is clear that by operation of law title to this parcel of land, extending 37 feet 9 inches westerly from Center street, vested in the city upon the filing of the oaths of the commissioners of appraisal. The plaintiffs contend that because the intention to acquire this particular easement was not specifically set forth upon the maps or plans filed upon the memoranda attached thereto, or in the resolutions adopted by the board of rapid transit commissioners, or set up in the petition for the appointment of commissioners of appraisal, that it is not subject to condemnation in these proceedings, and that, therefore, they are entitled to enjoin the taking down of this wall, and the subsequent destruction of their easement without a provision for due compensation.

Passing the question of the insufficiency of the complaint upon this point, we will treat it as if properly before us. The complaint itself alleges in the sixth paragraph thereof as follows:

"Upon information and belief, that in said proceeding described in paragraph fifth hereof, application is not made to acquire title to any part of the said premises known as No. 243 Canal street, except to acquire such part of the easement described in paragraph third hereof as may be imposed upon said property sought to be acquired as aforesaid by the city of New York."

That is an allegation that the said easement is sought to be acquired. But, passing that, the statement in the papers in the condemnation proceedings is as clear as language can make it that what is intended to be acquired is "an estate in fee simple absolute, free from all liens or incumbrances." There can be no doubt that the property sought to be acquired, 239 and 241 Canal street, is incumbered by the easement which it is claimed 243 Canal street has to insert its beams in the westerly wall of 239 and 241 Canal street, so long as the same shall stand, and that a fee simple absolute, free from all liens and incumbrances in 231 and 241, cannot be obtained, otherwise than by the acquirement of said easement. Fee simple absolute is the broadest term describing title to real estate. When that is sought to be acquired, the whole title is included.

The words of the rapid transit statute, specifying rights, franchises, easements, or privileges, in no respect affect the question. This statute was passed for the purpose of providing a way for the city to procure transit facilities. The roads to be built thereunder might be surface or elevated or subsurface roads. If elevated and on the streets of the city, the fee of property abutting upon the streets would certainly not be required; but, under the doctrine of the elevated railroad cases, the abutting property would possess easements which would have to be acquired, and so the statute properly provided that the city authorities vested with jurisdiction should clearly indicate exactly what was necessary, and should specifically set forth what they intended to acquire by condemnation. To interpret the statute to mean that when a fee simple absolute, free from all liens and incumbrances to a particular parcel of land, was required, it was necessary to go further and specifically set forth each easement, franchise, right, or privilege incident thereto, is to impute to the Legislature an ignorance of one of the fundamental principles of real estate law for which there is no warrant.

We therefore hold that the language used in all the documents incident to the condemnation proceedings accurately set forth the purpose thereof, namely, to acquire the entire title to the property in question, and that since the date of the filing of the oaths of the commissioners of appraisal that entire title has been vested in the city with a corresponding obligation upon the city to pay to the former owners of that property the due compensation required by law. If the plaintiffs, as owners of 243 Canal street, have a property right in the property sought to be condemned by way of a beam right easement taken in this proceeding, they are entitled to compensation therefor. That compensation must come from the total amount paid for the acquirement of the full title to 239 and 241, heretofore burdened as the servient estate with this property right. The award takes the place of the property. As the property was burdened with the easement, so the award must answer for the extinguishment thereof. When the city takes property in fee simple, it must pay for such title. Out of that is to be carved such portions as represent the fair value of the subsidiary interests which, taken together, make up the entire estate. "The awards, therefore, represent the aggregate value of all the interests in each parcel." Matter of Opening Eleventh Ave., 81 N. Y. 436. "It is quite apparent that two or more persons may have an interest in land, which, taken together, would constitute an ownership of the land, and whether they are entitled as tenants in common to the fee of the land, or one is the owner of the fee while the other is the owner of an estate either for life or for years or an easement to which the land is servient, they together are the owners of the land, and are entitled to the fund which stands in place of the land according to their respective interests." Matter of Board of Street Opening, 27 App. Div. 265, 50 N. Y. Supp. 621.

It follows, therefore, that the complaint does not state facts sufficient to constitute an equitable cause of action; that facts showing irreparable damage are not alleged; that a complete and certain method

of obtaining compensation is provided; and that the injunction was improperly issued. The order appealed from should, therefore, be reversed, and the injunction vacated with costs and disbursements. All concur.

